IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PATRICK GARCIA, | No. 2:22-CV-2159-TLN-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| F. MOHMAND, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Defendants' motion to dismiss, ECF No. 15, Plaintiff's opposition, ECF No. 20, and Defendant's reply, ECF No. 21. Defendants argue that Plaintiff's complaint runs afoul of Rule 8 of the Federal Rules of Civil Procedure and that Plaintiff fails to state cognizable claims against some of the defendants.

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual

1

factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The Court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

///

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

## I. PLAINTIFF'S ALLEGATIONS

The events underlying the complaint occurred while Plaintiff was a prisoner at the California Medical Facility (CMF) in Vacaville, California. See ECF No. 1, pg. 4. Plaintiff names the following defendants: (1) Correctional Officer (CO) Mohmand; (2) CO Rodriguez; (3) Warden Cueva; (4) Associate Warden Snelling; (5) Captain J. Ali; (6) Lieutenant J. Thurmon; (7) Sergeant C. Leali; (8) Sergeant K. Fisk; (9) Lieutenant K. Ancheta; (10) Associate Warden Hurtado; (11) Captain R. Brown; (12) Chief Medical Officer Osmond; (13) Unit-G-3 Wing Doctor BA Dhillon; (14) Unit-G-3 Wing Nurse J. Reyon; and 50 Doe defendants to be named as soon as Plaintiff is made aware of their names. See id. at 4-9. Each defendant is named in their official and individual capacities. See id.

The complaint describes how Plaintiff arrived at CMF with numerous severe medical issues. See id. at 10-12. Plaintiff claims that for over seven years he was disciplinary-free and in 2018 the Board of Prison Hearings assigned him specific tasks to fulfill so he could potentially be released on elderly parole. See id. at 12. Because Plaintiff's medical conditions were gradually worsening, he was endorsed as a "'permanent' Out-Patient Housing Unit (OHU) patient." See id. Plaintiff claims he had a good relationship with correctional officers and medical staff until CO Mohmand began working at CMF. See id.

Plaintiff contends that he filed a grievance because the prisoners in his unit were being locked down every day from 6:00 a.m. until 11:00 a.m., let out for one hour, then locked up again. See id. Plaintiff argues that this caused the inmates to fight for prison resources such as showers and phones during the single hour they were released, and that this increased racial tensions among the inmates. See id. Further, Plaintiff contends that Defendant Ancheta lied in his response to Plaintiff's complaint and claimed that OHU health care staff utilized the time the inmates were locked up to pass out medications to individuals, which Plaintiff alleges is a

misrepresentation. See id. at 13. Following this misrepresentation, Plaintiff asserts that he filed an appeal and sent three letters to the Chief of Inmate appeals, which inspired CO Mohmand to target Plaintiff for retaliation. See id.

Plaintiff alleges that he explained to Mohmand that he reported the issue of being locked down and she responded with "I don't care, I'll run it my way!" Id. The next day at breakfast, Plaintiff alleges his religious kosher meals did not show up, but all the other inmates received their meals. See id. at 14. Additionally, Plaintiff claims that after Mohmand gave out all the other meals, she laughed at him and closed the cell door. See id. Plaintiff further contends that Mohmand falsely told Plaintiff's friends, who were black and Muslim, that Plaintiff said degrading things about Muslims. See id. Plaintiff claims this was Mohmand's attempt to ruin Plaintiff's friendships. See id. Further, Plaintiff alleges that Mohmand routinely refused to provide Plaintiff with his kosher meals for the next month and told the inmate helpers "F-the Jews!" See id. at 14-15. Plaintiff contends that he escalated these issues to supervisors and kitchen staff in order to receive his meals, but another CO, who is not named as a defendant, simply joined in the abusive behavior with Mohmand. See id. at 14. Plaintiff contends that Mohmand treated him this way because he is Jewish and to make him "beg like a dog for his food." Id. at 15.

Plaintiff states that he began to stay in his cell in fear of retaliation and because Mohmand threatened to have him removed from OHU and take away his specialized medical care; Mohmand also regularly attempted to get the Muslim inmates to jump him. See id. at 16. Plaintiff contends that he escalated reports of this behavior to Defendants Cueva, Snelling, Ali, Thurmon, and Leali, but that they refused to respond or answer them, and they condoned Defendant Mohmand's actions. See id.

In addition to this abuse, Plaintiff claims that he was verbally abused by Mohmand who made fun of his handicap after he filed a medical accommodation request form. See id. at 17. Plaintiff alleges that Mohmand retaliated against his reporting by falsifying Rules Violations Reports against Plaintiff, and that Defendant Thurmon reviewed the reports and denied Plaintiff the ability to have witnesses to contest the reports. See id.

1          Plaintiff claims that he continued to notify Defendants Cueva, Snelling, Hurtado, Ali, Brown, Thurmon, and Leali, they all knew and were very aware of what was transpiring, but did nothing, turned a blind eye to it, and then contributed to the assault. See id. Plaintiff then claims he tried to file a grievance against all the aforementioned parties, but they screened it out because he specifically gave their names as accomplices. See id. Following this report, Plaintiff contends that he was wrongfully removed from OHU because Mohmand retaliated against his reporting by manipulating the medical department to remove him from OHU. See id. at 23. Plaintiff claims that he tried to explain the situation to his medical nurse, RN Reyon, but that RN Reyon was conspiring with Mohmand. See id. at 23-24. Plaintiff states that Mohmand and RN Reyon went into the nurse station and, when they came out, they were smiling and Mohmand stated, "bye, bye," with a little hand wave. See id. Immediately after this, Plaintiff was taken to see Dr. BA Dhillion for an unscheduled appointment, and Dr. BA Dhillon discharged him from OHU. See id. at 24.

           Plaintiff alerted Chief Medical Officer Dr. Osmund of the alleged malfeasance, but Dr. Osmund joined the conspiracy and removed him from OHU. See ECF No. 1 at 25. When Plaintiff protested this and asked if he was being discharged due to reporting CO Mohmand, Plaintiff claims that Dr. Osmund stated, "[s]he is my Muslim sister, you're out of here!" Id. at 26. Plaintiff asserts that he was removed from OHU and placed into administrative segregation for trying to expose this hate crime. See id. at 25.

           Plaintiff's asserts several claims for relief. Plaintiff alleges that all defendants violated Plaintiff's First Amendment right to be free from retaliation. See id. at 33. Plaintiff claims that CO Mohmand purposely targeted Plaintiff and that the other defendants all knew of the retaliatory behavior and failed to intervene. See id.

           Plaintiff also asserts that he was denied his right to Freedom of Religion, in violation of the First Amendment to the constitution. See id. This claim asserts that CO Mohmand targeted Plaintiff due to Plaintiff's Jewish religion and that the other defendants knew of Mohmand's hate crime" and "hid the facts. See id. at 33-34.

           Plaintiff's third claim for relief alleges that the CO Mohmand violated Plaintiff's

5

1 Eighth Amendment right to be free from cruel and unusual punishment. See id. at 34. Plaintiff
2 further alleges that his Eighth Amendment right to adequate medical care was violated. See id. at
3 35. This claim is also connected to the same facts as Claims I and II. Plaintiff asserts that CO
4 Mohmand targeted Plaintiff due to Plaintiff's Jewish religion, and that the other defendants knew
5 of Mohmand's actions and failed to intervene. See id. at 34.

6 Plaintiff's final cause of action is a claim that his Fourteenth Amendment rights to
7 due process and equal protection were violated. See ECF No. 1, pg. 35. Plaintiff alleges that CO
8 Mohmand racially targeted him and committed hate crimes against him because he was Jewish.
9 See id. Plaintiff further alleges that he informed the other defendants of a racist hate crime, and
10 they hid the facts." See id.

## II. DISCUSSION

In their motion to dismiss, Defendants argue: (1) Plaintiff's complaint violates Rule 8 of the Federal Rules of Civil Procedure; and (2) Plaintiff fails to state claims upon which relief can be granted. See ECF No. 15-1. In support of their motion, Defendants submit Plaintiff's declaration, cited by Plaintiff as Exhibit M to the complaint and referenced in the complaint, but not attached to the complaint. See ECF No. 15-3. The same declaration was submitted by Plaintiff on behalf of an inmate in another case, Newsome v. Loterzstain, et al., E. Dist. Cal. case no. 2:19-cv-0307-JAM-JDP-P.

### A. Rule 8

The Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. *Pro se* litigants are "entitled

6

to great leeway when the court construes his pleadings, [though] those pleadings must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

While Plaintiff's complaint is 36 typed pages (not including attachments) and contains some extraneous details, it nonetheless provides a sufficient basis for understanding the factual allegations against the defendants. See ECF No. 1. Specifically, pages 33 to 36 of the complaint detail Plaintiff's various legal claims and the reasons Plaintiff believes he is entitled to relief from each defendant. See id. at 33-36.

### B.   Failure to State a Claim

Defendants begin this portion of their argument with general discussions of the elements of claims under § 1983, the rule requiring that there be a causal link alleged between each named defendant and a constitutional violation, the rule for claims against supervisory defendants, and the rule for claims against prison officials in their official capacities. See ECF No. 15-1, pgs. 20-22. Defendants, however, provide no specific arguments except as to official capacity.

As to official capacity, Defendants contend:

> . . . Since CDCR is a state agency, defendants who are its employees, are immune from suit for monetary damages in their official capacity. Here, Garcia sues Defendants in their official capacities. But these claims are barred by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332 (1979). Thus, the Court should dismiss Garcia's official capacity claims.

ECF No. 15-1, pg. 22.

While this argument is well-taken, a review of Plaintiff's complaint reflects that each defendant is sued in both their official and individual capacities. Thus, though Plaintiff may not proceed against the named defendants in their official capacities, the action may nonetheless go forward here where Plaintiff has also sued the defendants in their individual capacities.

///

///

Defendants next raise more specific arguments as to the various legal theories

7

presented by the facts alleged in Plaintiff's complaint. See ECF No. 15-1, pgs. 22-30. Defendants argue generally:

> The complaint asserts causes of action against Defendants Rodriguez, Cueva, Snelling, Thurmon, Ancheta, Hurtado, Brown, Osman, Dhillon, Rayon, Fisk, Cavagnola, and Leali for: (1) retaliation in violation of the First Amendment (Cause of Action, Count I); (2) burden on his religion under RLUIPA [Religious Land Use and Institutionalized Persons Act] (Cause of Action, Count II); (3) the right to be free from cruel and unusual punishment in violation of the Eighth Amendment (Cause of Action, Count III); (4) his right to due process in violation of the Fourteenth Amendment (Cause of Action, Count IV); (5) deliberate indifference to his medical care (Cause of Action, Count IV); (6) violation of his right to equal protection (Cause of Action, Count IV); and (7) failure-to-protect in violation of the Fourteenth Amendment (Cause of Action, Count IV). All of these claims fail for the same reason: Garcia fails to allege particular facts supporting a cause of action against them.

ECF No. 15-1, pg. 22.

Finally, Defendants contend that Plaintiff fails to allege facts sufficient to establish a claim for relief against Defendant Mohmand. See id. at 31.

        1.      Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

1    Defendants list the elements of a retaliation claim and quote from Plaintiff's
2 complaint, but they offer no analysis or insight as to how the claim is deficient. See ECF No. 15-
3 1, pgs. 22-23.  The Court finds that Plaintiff alleges, as outlined above, that the specified
4 defendants took specific adverse actions against him because he filed complaints, which
5 allegations are sufficient to survive a 12(b)(6) motion to dismiss.
6    2.   Free Exercise of Religion
7    The United States Supreme Court has held that prisoners retain their First
8 Amendment rights, including the right to free exercise of religion. See O'Lone v. Estate of
9 Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus,
10 for example, prisoners have a right to be provided with food sufficient to sustain them in good
11 health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d
12 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities
13 where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428
14 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.
15 See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to
16 that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto,
17 405 U.S. 319, 322 (1972).
18    However, the court has also recognized that limitations on a prisoner's free
19 exercise rights arise from both the fact of incarceration and valid penological objectives. See
20 McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a
21 simplified food service has been held sufficient to allow a prison to provide orthodox Jewish
22 inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873,
23 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting
24 inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930,
25 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).
26 / / /
27 / / /
28    While free exercise of religion claims originally arose under the First Amendment,

Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection. See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005). Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349. The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA) of 1993. However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006). Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)). Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a). See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure." 518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion

about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them. Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four factors: (1) whether there is a rational connection between the regulation or restriction and the

government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Defendants argue that because they could not remedy the issue relating to kosher meals, they are not proper defendants. See ECF No. 15-1, pg. 24. According to Defendants:

> . . . There is no basis for concluding that Defendants could fix the alleged issues with the kosher meals at the institution as required for a RLUIPA claim. *See Uhuru v. Elridge*, No. 2:19-CV-1119 KJN P, 2020 WL 1450828 at *4 (E.D. Cal. Mar. 25, 2020) ("The proper defendant for a RLUIPA claim is the official who could appropriately respond to a court order on injunctive relief should one ever be issued." (*Citing Jones*, 791, F.3d at 1031)); *Bartlett v. Wengler*, No. 1:12-CV-00312-EJL, 2014 WL 4773959, at *5 (D. Idaho Sept. 24, 2014) ("Defendants Thomas and Vallard do not have any authority to decide which types of meals are provided to inmates at ICC in general or to Plaintiff in particular. Simply put, these Defendants are not the proper defendants for Plaintiff's RLUIPA claims for injunctive relief."). Accordingly, the Court should dismiss Garcia's RLUIPA claims against all Defendants.

ECF No. 15-1, pg. 24.

///

///

Even if Defendants are correct that they could not remedy the issue regarding

12

1    kosher meals, Plaintiff brings claims (as Defendants note in their reply) not only based on his
2    meals but also to "perform [his] religion . . . without fear of retaliation or racism and anti-Semitic
3    attacks." ECF No. 1, pgs. 33-34. While injunctive relief under RLUIPA may not be available,
4    Plaintiff can pursue his claims under the First Amendment's reasonableness test.

### 3. Eighth Amendment

Defendants raise three arguments concerning claims under the Eighth Amendment. First, Defendants argue that Plaintiff cannot proceed with an Eighth Amendment claim based on his removal from OHU. See ECF No. 15-1, pgs. 24-25. Second, Defendants argue that Plaintiff has not alleged facts sufficient to sustain an Eighth Amendment claim based on deliberate indifference to serious medical needs. See id. at 26-28. Finally, Defendants contend that Plaintiff cannot maintain a claim based on failure to protect. See id. at 28-29.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

///

### i. Removal From OHU

13

Defendants argue that Plaintiff cannot proceed with a claim under the Eighth Amendment based on Plaintiff's removal from OHU. See ECF No. 15-1, pgs. 24-25. The Court agrees because, by itself, being transferred or reclassified does not amount to cruel and unusual punishment. See Hewitt v. Helms, 459 U.S. 460, 468 (1983). Even so, as discussed below, Plaintiff alleges that prison officials were encouraging inmates to jump him. See ECF No. 1, pg. 16. To the extent Plaintiff's removal from OSU and placement in a different housing program resulted in a known danger to Plaintiff's safety, as discussed below such allegations gives rise to cognizable Eighth Amendment claims. See Farmer, 511 U.S. at 834.

ii. Medical Needs

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See

Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). However, a claim involving alternate courses of treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in conscious disregard of an excessive risk to the prisoner's health. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

Here, Plaintiff generally alleges that his removal of OHU resulted in worsening medical problems. See ECF No. 1. The Court agrees with Defendants that "Garcia's complaint fails to allege harm caused [by] the decision to transfer him out of CMF-OHU." ECF No. 15-1, pg. 28. Plaintiff should be provided leave to amend to more clearly state how Plaintiff's medical condition was affected by his removal from OHU and how each defendant was deliberately indifferent to his serious medical needs arising from removal from OHU.

        iii.  Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion

of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they *are not liable* if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff generally alleges in this case that his removal from OHU and other conduct by defendants resulted in him being targeted for racial attacks by other inmates, particularly Muslim inmates. See ECF No. 1. The Court agrees with Defendants, however, that Plaintiff's allegations against the named defendants collectively fail to establish the necessary causal link between a violation of Plaintiff's rights and any specific defendant. Consistent with the principles outlined above, Plaintiff must allege facts to show how each defendant knew of a risk to Plaintiff's safety and failed to act to prevent that risk. The Court will recommend that Defendant's motion to dismiss be granted and that Plaintiff be provided leave to amend.

### 4. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause

of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Again, Defendants list the elements of an equal protection claim and quote from Plaintiff's complaint but offer no analysis or insight as to how the claim is deficient.  See ECF No. 15 at 25.  Plaintiff makes clear in his complaint that he was treated differently from similarly situated prisoners because he is Jewish.  However, the Court agrees with Defendants that Plaintiff's references to the defendants collectively is insufficient.  Plaintiff should be provided leave to amend in order to specify his allegations as against each named defendant.  Plaintiff must allege facts showing how each defendant discriminated against Plaintiff based on his religion.

####   5.   Procedural Due Process

With respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate.  See Wolff, 418 U.S. at 563-70.  Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached."  Id. at 455-56.  However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by

way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Here, Plaintiff alleges that Defendant Thurmon denied Plaintiff the ability to call witnesses at a rules violation disciplinary hearing which resulted in a guilty finding and Plaintiff's placement in administrative segregation. See ECF No. 1, pgs. 17-18. In their motion to dismiss, Defendants ask the Court to take judicial notice and to consider Plaintiff's declaration filed in another matter and documents included therewith, all referenced in the current complaint but not attached. See ECF No. 15-3 (Plaintiff's declaration and attached documents); ECF No. 15-4 (request for judicial notice). According to Defendants, these documents show that, with respect to the disciplinary hearing in question, Plaintiff was in fact provided all required procedural protections.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint. See Cooper, 137 F.3d at 622. The Court may, however, consider documents whose authenticity is not in question and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee, 250 F.3d at 688. Defendants ask the Court to consider a document referenced in Plaintiff's complaint but not attached, specifically Plaintiff's declaration and attached documents submitted by Plaintiff on behalf of another inmate in another case. See ECF Nos. 15-3 and 15-4. These do not constitute documents whose authenticity is **not** in question. To the contrary, Plaintiff's declaration filed on behalf of another inmate can be called into question in terms of veracity and relevance to the current action. As such, the Court is **not** inclined to consider these documents.

The Court finds Plaintiff's allegation, taken as true, that Defendant Thurmon did not allow Plaintiff to call witnesses at a disciplinary hearing is sufficient to establish a procedural due process claim. Defendants may, later in the proceedings, submit Plaintiff's declaration and attached documents, which include notes from the disciplinary hearing at issue, as proof against Plaintiff's claim.

///

///

     6.  Conspiracy

18

Throughout the complaint, Plaintiff alleges that Defendants engaged in a conspiracy to violate his rights. See ECF No. 1.  A conspiracy claim requires allegations of fact showing that there was an agreement or meeting of minds to violate constitutional rights. See Woodrum v. Woodward Cnty., Okl., 866 F.2d 1121, 1126 (9th Cir. 1989).  "Each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).

Defendants argue that Plaintiff failed to plead specific facts showing an agreement between defendants to violate his constitutional rights. See ECF 15-1, pg. 29.  According to Defendants:

> As an initial matter, Garcia makes only conclusory allegations in his attempt to state a conspiracy under 42 U.S.C. § 1983. Garcia must plead specific facts showing an agreement or meeting of minds between the defendants to violate his constitutional rights, which he has not. *See Woodrum*, 866 F.2d at 1126. Therefore, Garcia's conspiracy claim fails as a matter of law.

ECF No. 15-1, pg. 29.

Here, while Plaintiff generally alleges that Defendants conspired with each other, his allegations are not specific.  In particular, Plaintiff has not alleged facts to show the existence of an agreement among two or more defendants to violate Plaintiff's rights.  Plaintiff should be provided leave to amend in order to elaborate on his conspiracy allegations.

### 7. Defendant Mohmand

Defendants argue that the complaint fails to allege facts sufficient to link Defendant Mohmand, a supervisory defendant, to a constitutional violation. See ECF No. 15-1, pg. 32. The Court does not agree.  As discussed above, the complaint is replete with specific allegations as to Defendant Mohmand's personal conduct and the Court finds these allegations sufficient to establish claims against Defendant Mohmand.

/ / /

/ / /

/ / /

## III.  CONCLUSION

1             In opposition to Defendants' motion to dismiss, Plaintiff states that he can allege additional facts, and indeed includes some of those facts, in support of his complaint. See ECF No. 20. Plaintiff has also attached additional documents to his opposition which he claims support the complaint. The Court finds that, in light of all of the foregoing as well as Plaintiff's representation that additional facts supporting the complaint can be alleged, Plaintiff should be permitted leave to file a first amended complaint which contains all factual allegations, and which attaches all documents Plaintiff claims support those allegations in a single pleading.

            Based on the foregoing, the undersigned recommends that Defendants' motion to dismiss, ECF No. 15, be GRANTED and that Plaintiff's complaint be DISMISSED with leave to amend.

            These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 15, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE